Hollins et al., Appellants, *v.* Pittsburgh Railways Company.

Argued November 17, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, ERVIN, and WATKINS, JJ. (WOODSIDE, J., absent).

142

*Dennis C. Harrington*, with him *James P. McArdle*, for appellants.

*Earl W. Brieger*, for appellee.

OPINION BY WRIGHT, J., December 9, 1958:

On February 8, 1954, Mary, Benjamin, and Jerry Hollins, then aged 8, 10, and 11 years, respectively, were traveling to school as passengers on a bus owned and operated by the Pittsburgh Railways Company. While proceeding down Josephine Street, which was icy at the time, the bus slid to the side and collided with a wooden telegraph pole. Clyde Hollins, parent and natural guardian of the children, brought suit in trespass on their behalf and in his own right, alleging that the bus had been operated negligently and that the children had suffered injuries as a result. After a three-day trial the jury returned the following verdicts, the form of which was in accordance with the instruction of the trial judge: "March 22, 1957, we, the Jurors empanelled in the above entitled case, find for the plaintiff Mary Hollins—$100, Clyde Hollins—$60; Benjamin Hollins—$600; Clyde Hollins—$70; Jerry Hollins—0; Clyde Hollins—$220". The plaintiffs filed a motion for a new trial and the defendant filed a motion for judgment n.o.v., both of which motions were refused. Judgments were subsequently entered on the verdicts, and these appeals by the plaintiffs followed.

The contention of counsel for appellants is that the verdicts are inconsistent and inadequate.

Appellants rely principally on *Pascarella v. Pittsburgh Railways Co.*, 389 Pa. 8, 131 A. 2d 445, wherein Mr. Justice MUSMANNO said: "Once a jury imposes legal liability on a responsible party, they may not wilfully or capriciously withhold payment of an item which is inextricably interwoven in the pattern of the liability". In the *Pascarella* case three minors were seriously injured, one of them fatally. On motion of the plaintiffs, the lower court granted a new trial. The following statement by Mr. Justice (later Chief Justice) STERN in *Carpenelli v. Scranton Bus Co.*, 350 Pa. 184, 38 A. 2d 44, is particularly appropriate: "When a court grants a new trial on the ground of inadequacy of the verdict an appellate court, in the absence of a gross abuse of discretion will not interfere . . . When a trial court refuses to grant relief against an allegedly inadequate verdict an appellate court will exercise even greater caution in reviewing its action". See also *Kobsar v. Johnson*, 185 Pa. Superior Ct. 510, 138 A. 2d 872.

The grant or refusal of a new trial for inadequacy of the verdict is a matter for the sound discretion of the trial court. Its action will not be reversed on appeal except for a clear abuse of that discretion, such as where the verdict is so unreasonably low as to present a clear case of injustice: *Takac v. Bamford*, 370 Pa. 389, 88 A. 2d 86. If the verdict bears a reasonable resemblance to the damages which were proven, it is not the function of this court to substitute its judgment for that of the jury: *Mohler v. Worley*, 179 Pa. Superior Ct. 56, 116 A. 2d 342. It is the province of the jury to appraise the testimony and to accept or reject the estimates given by the witnesses: *Perzak v. Coulter*, 171 Pa. Superior Ct. 475, 90 A. 2d 256; *Elza*

*v. Chovan,* 187 Pa. Superior Ct. 275, 144 A. 2d 436. In the words of Mr. Justice BELL in *Karcesky v. Laria,* 382 Pa. 227, 114 A. 2d 150: "Moreover, it is important to remember that neither a jury nor a judge who sees and hears the witnesses have to believe everything or indeed anything that a plaintiff (or a defendant) or his doctor, or his other witnesses say, even though their testimony is uncontradicted".

Appellant's main argument concerns the awards in the cases of Jerry and Benjamin. The record as to Jerry's case does not present such uncontradicted evidence of injury as would render perverse a finding by the jury that he was actually not injured at all. Cf. *Kirby v. Carlisle,* 178 Pa. Superior Ct. 389, 116 A. 2d 220. It should be noted that Jerry did not testify that he received any injury. His mother testified that Jerry told her that he had been bumped on the head. Dr. King, a general practitioner, first saw the boy a week after the accident. He took no x-rays, made no tests to determine whether there was any pressure on the brain, and found no contusion or signs of injury to the skull. He predicated his diagnosis on exaggerated reflexes and disturbed equilibrium. He described the injury as a concussional syndrome. The mother testified to alleged personality changes and trouble with the boy's attitude toward school. On the other hand, the jury was faced with Jerry's own testimony concerning the accident, in which he did not mention any blow on his head. He was taken to a hospital where he was examined, found not to be injured, and discharged. Furthermore, the school records showed no change in Jerry's work following the accident. It should also be noted that these records showed a school attendance which directly contradicted the mother's testimony regarding protracted absences due to ill health following the alleged injury. Moreover, it is

not without significance that a subsequent trespass action based on a later accident was entered upon Jerry's behalf wherein claim is made for the identical injuries alleged in the present case. It is understandable that the jury concluded that Jerry sustained no compensable injuries. The award to the parents of the amount of the medical bill is not inconsistent with this finding. We agree with Judge LEWIS in his well-considered opinion for the court en banc that "it is quite conceivable, however, that the jury took the attitude that the accident having been caused by the negligence of the bus driver, the parents of the minor child should not be put to the expense of finding out if the accident caused any substantial injury to the child, and awarded them the amount of the doctor bill".

The record as to Benjamin's case discloses a conflict between the testimony of appellants' dentist, Dr. Lewis, and the findings made at the hospital immediately following the accident. Without detailing the testimony of Dr. Lewis, it is sufficient to say that it is not entirely convincing. His estimate of the cost of necessary prosthetic devices to correct the alleged injury was so high ($1065.00) that, in the words of Judge LEWIS, "it is quite conceivable that the jury was not very much impressed with his opinion as to the cost of replacing the teeth, especially in view of the fact that the majority of them were of the age where teeth replacement had already become a necessity".

Appellants do not seriously question the award in Mary's case. They concede that "perhaps the court would be less shocked by the award of a total of $160.00". In this connection, Judge LEWIS was "of the opinion that the evidence indicates that the alleged injuries to Mary Hollins were very slight, and the verdicts . . . were sufficient".

Our conclusion is that the verdicts here under consideration reflect a fair appraisal of the evidence. Except in Jerry's case, where the testimony fully warranted a finding of no injury, they were substantial and not merely nominal. They bear a reasonable resemblance to the damages proven. See *Pryor v. Graff,* 179 Pa. Superior Ct. 622, 177 A. 2d 818. We find no abuse of discretion in the refusal to grant a new trial.

Judgments affirmed.